FILED
2008 Jun-18 AM 10:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

ROSEMARY PEEK,

PLAINTIFF,

v. CASE NO.: CV-07-J-1629-NE

CITY OF DECATUR, ALABAMA,

DEFENDANT.

**MEMORANDUM OPINION**

Pending before the court is defendant's motion for summary judgment and brief and evidence in support of said motion (docs. 36-38). The plaintiff did not respond to said motion.[1]

Plaintiff commenced this action by filing a complaint in state court alleging the defendant discriminated against her, on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). She further alleged that she suffered harassment based on her gender, also in violation of Title VII.[2] Having considered all of the pleadings and the defendant's

[1]Pursuant to Exhibit A of the Scheduling Order entered by the court on October 31, 2007, the plaintiff had fourteen (14) days to respond to the motion for summary judgment from the date said motion was filed. Defendant's motion was filed on May 22, 2008. The plaintiff's response was therefore due on or before June 5, 2008. To date, no response has been received.

[2]The plaintiff also brought claims pursuant to state law and 42 U.S.C. § 1981a against this and other defendants. These other claims, and the claims against defendants other than the City of Decatur, have been previously dismissed by orders of this court. *See* docs. 19, 20, 27 and 28.

memorandum and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.

**FACTUAL BACKGROUND**

The plaintiff was hired by the defendant as a fire fighter on January 2, 2001. Plaintiff depo. at 17. In November 2003 the plaintiff was assigned to Station 8. *Id.* at 46. At the time, she was the only female on her shift, but another female worked a different shift at Station 8 until May 2005. *Id.* at 47-48. Beginning in 2005, the plaintiff made numerous verbal complaints to her superiors regarding what she believed to be discrimination and harassment. *Id.* at 23.

Station 8 had multiple sets of restrooms which were available to the public, although the employees on plaintiff's shift tended to direct the public to the set not adjacent to the sleeping area.[3] Plaintiff depo. at 54-56. Family members also visited the firefighters at the station on a regular basis and used the restrooms. Plaintiff depo. at 57-58; Barnett depo. at 40, 66; Johnson affidavit, submitted as defendant exhibit 4, at ¶ 4. The firefighters were responsible for cleaning the bathrooms. Plaintiff depo. at 61-62. Usually they would do this when they came on duty. *Id.* at 62-63.

Beginning in May 2005, the condition of the bathrooms deteriorated. Plaintiff

---

[3]Because of a public walking trail near the station, the general public did use the restrooms at Station 8. Plaintiff depo. at 49-50, 56; Chief Johnson depo. at 51.

depo. at 64. Several times a week she came to work to find unsanitary conditions. *Id.* at 64, 67, 75-76. This continued until January 1 or 2, 2006. *Id.* at 65. The plaintiff complained to Lieutenant Barnett, who took her seriously, and they began documenting these incidents in August 2005.[4] Barnett depo. at 16, 27, 53 68. Barnett thought the incidents were harassment directed at plaintiff. *Id.* at 37-38.

From August to January, they documented each offensive incident. Plaintiff depo. at 68-70, 77-78. Lieutenant Barnett or Lieutenant Hill would observe the condition of the bathroom. Plaintiff depo. at 73-74, 82-83, 137-138; Johnson depo. at 68; C. Johnson affidavit, ¶ 8. The plaintiff agreed that none of the incidents were unusual for public restrooms. Plaintiff depo. at 84-86. She also agreed that she had no evidence these incidents were intentional, that they were directed toward her specifically, or who was responsible. *Id.* at 85-86, 117, 121, 123-124, 133.

The plaintiff complained that once in November 2005 she came to work and found her bed sheets and blankets messed up in a pile on the bed. Plaintiff depo. at 86-87, 93-94. She told her lieutenant, who in turn notified Battalion Chiefs Nicholson and Johnston, who came to Station 8 to see it. *Id.* at 95-96, 124-125. When they arrived, the plaintiff told them that she felt that it was harassment, that she

---

[4]The plaintiff explained that she waited to complain about these incidents because she was hoping that if she did not make a fuss about it that it would quit happening. Plaintiff depo. at 83.

wanted it stopped and that she wanted to see the chief about it. *Id.* at 125, 141. The Chief came to the station and the plaintiff related everything they had documented. *Id.* at 125, 140. He said he would investigate. *Id.* at 127, 142. They discussed Barnett's suspicion that Sammy Stetler might be behind these events. Johnson depo. at 41-42, 54. Barnett depo. at 35-36. Johnson testified that he looked into it, but could never find out who did these things. Johnson depo. at 56.

On another occasion, both the plaintiff and another firefighter on her shift, Richard Taylor, found the top sheets from their beds removed and placed in the dirty laundry, which appeared to be a prank. Plaintiff depo. at 103-105. During her deposition, the plaintiff provided numerous examples of incidents involving someone moving or using her belongings, but agreed she had no evidence that any of these events were directed toward her personally. *Id.* at 106-120.

Beginning with the first time the plaintiff complained about the condition of the bathroom, Battalion Chief Johnston and another Battalion Chief, Wendell Nicholson, came to Station 8, listened to the plaintiff's concerns, and told her that they would speak to everyone at Station 8 and tell them to stay out of the women's restroom. Plaintiff depo. at 96-99; Barnett depo. at 23. The Fire Chief, Charles Johnson, was informed of the complaints and agreed with Johnston's and Nicholson's efforts to inform all employees this would not be tolerated. Johnson depo. at 33-35.

Barnett talked to his shift crew about it beginning with the first instance to make sure the problem was not on his crew. Barnett depo. at 21-22. He also spoke to the two other lieutenants at Station 8 and told them it had to stop. *Id*. at 26. They assured Barnett they would address their crews again. *Id.*

The plaintiff and others suspected fellow firefighter Sammy Stetler did these things. Plaintiff depo. at 128-129, 131-132. Stetler had told the plaintiff in a joking manner that "you gals don't need to be working in the fire service anyway," three or four years previously. *Id.* at 135-136. Barnett also heard Stetler make similar comments. Barnett depo. at 36. As some point, Chief Johnson ran into Stetler and told him "I'm not accusing you or not accusing you of doing it. I'm just telling you if you're doing it, knock it off because I don't tolerate it .... if you know whose doing it .... tell them to knock it off because I don't tolerate it." Johnson depo. at 60.

The last incident that occurred at Station 8 was on December 29, 2005. Plaintiff depo. at 142-143. Stelter was reassigned from Station 8 to Station 3 in January 2006 due to department wide reassignments. Johnson depo. at 72-73.

The plaintiff further complains that when Station 3 needed someone for three shifts, Battalion Chief Johnston called and said to send Richard Taylor rather than plaintiff because Stetler had been moved to Station 3.[5] Plaintiff depo. at 160; Barnett

[5]Taylor filed a grievance for being transferred out of turn. Johnson depo. at 114; plaintiff exhibit 9 to Johnson depo.

depo. at 45. This was done to avoid any confrontation. Barnett depo. at 45; Johnston affidavit, submitted as defendant exhibit 5, ¶ 7. Chief Johnson testified that there was no recognized department policy regarding whose turn it was for a temporary transfer. Johnson depo. at 113. Rather, he charged the battalion chiefs with making sure the shifts were covered. *Id.*

When plaintiff informed Johnston that she did not have a problem working at any station, he told her he did not want to put her in a hostile environment.[6] Plaintiff depo. at 164. The plaintiff filed a grievance about this. Plaintiff depo. at 166; defendant exhibit 8 to plaintiff depo. Not liking the response she got, the plaintiff followed the procedure for her grievance to go to the chief, but she did not like his response either. Plaintiff depo. at 170-172. The chief suggested that if she pursued her grievance further, she might be permanently moved. *Id.* at 173-174. Chief Johnson denies making this statement. Johnson depo. at 23, 88-89. Sometime after this, the plaintiff was reassigned to Station 5, which is the busiest of the stations in Decatur. Plaintiff depo. at 175, 177. According to Johnson, there were several shifts at several stations that were short on personnel due to military activations and one resignation, so there were several reassignments. Johnson depo. at 88-89. When asked how plaintiff was chosen, Johnson replied "it was (sic) a firefighter needed

[6]This event forms the entire basis for plaintiff's allegation that she was "denied transfers to other stations..." in her Complaint. Complaint, ¶ 7, plaintiff depo. at 236.

there and she's a firefighter." *Id.* The plaintiff agreed during her deposition that after she was moved to Station 5, her position at Station 8 was never filled. Plaintiff depo. at 177.

The plaintiff further complains that after she was moved to Station 5, she was placed in the "rookie seat" in the fire truck. Plaintiff depo. at 179. According to plaintiff, departmental policy sets forth a specific duty for each "seat" when responding to a call. *Id.* at 180. She has seen nothing to indicate that the assignments are based on seniority, but stated this is how the department operates. *Id.* at 180-181; Barnett depo. at 50. Lieutenant Williams assigned Peek to that particular seat because it was the one unoccupied. Affidavit of Williams, submitted as defendant exhibit 7, at ¶ 4. After several weeks, the plaintiff changed her seat from behind the lieutenant to behind the driver by getting to work early and putting her gear there. Plaintiff depo. at 183-184; Williams affidavit, ¶ 4. She stayed there until she and the other firefighters began taking turns driving the truck. Plaintiff depo. at 186. The plaintiff had no problems with harassment the entire time she was at Station 5. *Id.* at 187.

On August 20, 2006, the plaintiff was involved in a wreck while driving the fire truck when responding to a call because traffic did not clear as she expected. Plaintiff depo. at 188, 191-193, 200. The plaintiff was not allowed to drive for the

remainder of that shift. Plaintiff depo. at 196-197; Williams affidavit, ¶ 5. The plaintiff believed taking her out of the driver's position was continued harassment. Plaintiff depo. at 199. According to the plaintiff, no one else was taken out of the driver's seat after an accident. *Id.* at 201. However, Chief Johnson stated that the practice of removing a firefighter from driving duties for the remainder of a shift after being involved in an accident was not uncommon. C. Johnson affidavit, ¶ 13.

Shortly after the day of the accident, the plaintiff's physician wrote a memo that plaintiff needed to take medical leave for illness, "secondary to and aggravated by stress." Plaintiff depo. at 206-207; defendant exhibit 10 to plaintiff depo. According to the plaintiff, she was suffering from anxiety, heart palpitations and shortness of breath. *Id.* at 207-208. She was not prescribed any medication for these conditions. *Id.* at 211, 216, 237

The plaintiff originally contacted the EEOC in April 2006 but did not hear back from them. Plaintiff depo. at 217-220. After the August 20, 2006, wreck, the plaintiff contacted the EEOC again. *Id.* at 220. The plaintiff resigned on September 17, 2006, by sending a letter to the mayor, and then filed an EEOC charge on September 26, 2006. Defendant exhibits 11 and 12 to plaintiff depo. The plaintiff stated she felt she could not go back to work because of all the actions she had experienced. Plaintiff depo. at 222-223.

In April 2007, after the plaintiff had resigned, Chief Johnson conducted an informal interview with Stetler based on new information he had. Plaintiff exhibit 11 to Johnson depo. Notes from that interview reflect that Johnson questioned Stetler about the various incidents about which Peek had complained. Plaintiff exhibit 11 to Johnson depo. Stetler denied participating in or having any information about any of the incidents, and Johnson recommended that a professional Internal Affairs investigation be done if more information was sought. Plaintiff exhibit 11 to Johnson depo.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e).

In meeting this burden the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir.2007).

**LEGAL ANALYSIS**

The plaintiff brings claims for sexual harassment, sex discrimination and

retaliation based on the above set of facts. The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 848 (11th Cir.2000). Although the plaintiff has failed to file a response to the defendant's motion for summary judgment, no procedural tool for a default summary judgment exists under Fed.R.Civ.Pro. 56(e). The court must still find that summary judgment is appropriate from the pleadings and the evidence. However, "the language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. With these standards in mind, the court considers each of the plaintiff's claims properly before it.

*A. Was plaintiff's EEOC charge timely brought?*

Any individual wishing to challenge an employment practice under Title VII of the Civil Rights Act of 1964 must first file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). The charge must be filed within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(f)(1). See also *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2162, 2165-2166 (U.S.2007). In order

for a charge to be timely filed, "the employee need only file a charge within 180 ... days of any act that is part of the hostile work environment." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 118, 122 S.Ct. 2061, 2075 (2002) (citation omitted). The Eleventh Circuit, interpreting *Morgan*, has ruled that a plaintiff cannot recover for acts that "occurred before the filing period if such acts are no longer part of the same hostile work environment claim because of 'certain intervening action by the employer.'" *Watson v. Blue Circle, Inc*. 324 F.3d 1252, 1258 (11th Cir.2003).

Assuming the behavior which forms the basis for plaintiff's complaints does constitute hostile environment sexual harassment, the facts establish that the bathroom incidents ceased entirely at the beginning of January 2006. The plaintiff did not file an EEOC charge until late September 2006. Counting back 180 days from September 26, 2006, the court finds any incident predating March 30, 2006, is barred by the clear language of the statute and the clear language of *Morgan, supra*. As such, the court finds none of the bathroom incidents or the other complaints of plaintiff prior to March 30, 2006, are actionable.

*B. Sexual Harassment/Hostile Work Environment*

To determine whether an actionable hostile work environment claim exists, the court looks to all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan,* 536 U.S. at 116, 122 S.Ct. at 2074. The court considers whether the above facts constituted a hostile work environment in relation to plaintiff's complaints which arose on or after March 30, 2006, or which are somehow related to those complaints. These include the plaintiff's complaint that she was not temporarily transferred to Station 3, that she was permanently transferred to Station 5, that she was assigned the "rookie-seat" and that she was not allowed to drive for the remainder of her shift after rear-ending a car in an intersection.

None of these incidents fall within the realm of "sexual harassment." To establish a prima facie case of hostile work environment sexual harassment, Peek must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment "was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) a basis for holding the employer liable. *Pipkins v. City of Temple Terrace, Florida,* 267 F.3d 1197, 1199 (11th Cir.2001). The four identifiable incidents simply do no rise to the level of harassment that is "sufficiently severe or pervasive enough to alter the terms and conditions of employment..." *Id.* The acts about which the plaintiff complains which post-date March 30, 2006, do not appear to be sexual in nature and

the plaintiff has offered no evidence, other than her own beliefs, that any of the conduct was based on her gender.

Furthermore, the plaintiff has failed in her burden to show that once her employer had notice of the alleged harassment, it failed to take immediate and appropriate corrective action. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278-80 (11th Cir.2002); see also *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir.1997) (requiring employers to take "prompt remedial actions" in response to harassment). Even assuming that the facts of this case demonstrate some type of harassment, the facts further show that the defendant took the plaintiff's complaints seriously and attempted to put an end to the incidents. The defendant investigated her complaints, repeatedly informed her coworkers that harassment would not be tolerated, and even continued to follow up on the plaintiff's complaints seven months after the plaintiff had voluntarily left her employment. The plaintiff has presented the court with no evidence from which a jury could find a basis to hold the defendant liable for the incidents at issue. This failure of proof on an essential element of the non-moving party's case necessarily renders all other facts immaterial. See *Celotex Corp.,* 477 U.S. at 322-23.

*C. Sex Discrimination*

To establish a prima facie case of sex discrimination, the plaintiff must show

(1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected classification more favorably. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000), citing *Holifield v. Reno,* 115 F.3d 1555, 1561-62 (11th Cir.1997). The plaintiff has failed to show that she suffered any adverse employment action or that a similarly situated employee outside her protected class was treated more favorably. This complete failure of proof on essential elements of the plaintiff's burden of proof requires this court to grant summary judgment in favor of the defendant on this claim.

*D. Retaliation*

The elements for a prima facie case of retaliation are that the plaintiff (1) engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse employment action exists. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999). *See also Gupta v. Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (abrogated on other grounds, *Crawford v. Carroll,* 2008 WL 2246677, 9 (11th Cir.2008)).

To establish an adverse employment action, "an employee must show a serious and material change in the terms, conditions, or privileges of employment ... [,]as

*viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239 (11th Cir.2001) (emphasis in original). "[A] transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch County, Georgia Bd. Of Educ.*, 231 F.3d 821, 829 (11th Cir.2000).

In the facts before this court, the plaintiff has failed to offer any evidence which satisfies the requirement of an "adverse employment action." She never suffered a material change in the terms, conditions or privileges of employment. Her transfer to station number 5 did not entail any reduction in pay, prestige or responsibility. As such, the court is of the opinion that the defendant's motion for summary judgment on this claim of the plaintiff is due to be granted.

## V. CONCLUSION

Having considered the foregoing, and being of the opinion that the defendant's motion for summary judgment is due to be granted on all of the plaintiff's claims, the court shall grant said motion by separate Order.

**DONE** and **ORDERED** this the 18th day of June, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE